# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

COUNTY BOARD OF ARLINGTON COUNTY, VIRGINIA,

*Plaintiff*,

v.

NATIONAL PARK SERVICE, *et al.*,

*Defendants*.

Case No. 1:26-cv-03372 (LMB-WEF)

**DECLARATION OF CAPTAIN MOHAMMED TABIBI IN SUPPORT OF PLAINTIFF'S MOTION FOR EMERGENCY RELIEF**

I, Mohammed Tabibi, declare as follows:

1. I am over eighteen years of age and competent to make this declaration. The facts stated here are based on my personal knowledge, on my review of records maintained by the Arlington County Police Department in the ordinary course of its business, and on information provided to me by County Police personnel in the course of my official duties. If called as a witness, I could and would testify competently to these facts.

**Background**

2. I am a Captain in the Arlington County Police Department, and have served in the Department for 23 years. I currently command the Tactical Operations Section, which includes the County's canine, SWAT, hazardous-materials, and civil-disturbance units, among others. I have also served as an Internal Affairs Investigator, Criminal Investigations Detections, Special Operations Section Supervisor, and Community Engagement Supervisor.

3. For approximately the past two years, I have also served as the lead administrator of the County Police's unmanned aircraft systems (*i.e.*, drone) program. In that role I am

responsible for, among other things, obtaining the Federal Aviation Administration waivers and authorizations the program needs to operate, and for coordinating and deconflicting County Police drone operations with other agencies during the many large events that take place in and around Arlington County.

4. I submit this declaration to describe how the drone operations announced for the proposed Triumphal Arch at Memorial Circle ("the Arch") threaten the County Police's own drone program and, with it, the County's ability to maintain public safety during major events and emergencies.

**Arlington County Police Department's Drone Program**

5. The County Police maintains a fleet of more than 20 drones, including backup drones. The County does not fly drones continuously, but instead deploys them during major events and in response to ongoing emergencies.

6. The County's drone program is a critical piece of its public-safety operations because the use of drones gives County officers situational awareness that they cannot obtain any other way, both at large-crowd events and during specific safety incidents. Emergency operations can include vehicle and foot pursuits and barricade or hostage situations.

7. A drone can go places officers cannot safely go and can provide an overhead view of an unfolding situation. For example, during a recent barricade incident involving an armed suspect, a County drone allowed officers to see inside the location where the suspect was holding a gun.

8. The County flies drones in Arlington airspace immediately adjacent to the planned Arch site, including along the State Route 110 corridor between Rosslyn and Crystal City. Planned events in that area include the annual Fourth of July celebrations, the Marine

Corps Marathon, and the Army Ten-Miler, among others, as well as the recent celebrations of the 250th anniversary of American independence.

**The County Police's Drones Already Operate in Tightly Constrained Airspace**

9. The airspace in which the County Police fly near Memorial Circle lies within the Washington, D.C. Flight Restricted Zone, the most restricted airspace in the country due to the many sensitive and secure facilities in the area, and along the flight path for Ronald Reagan Washington National Airport ("DCA"), which runs along the Potomac River. When County Police drones fly in the Rosslyn area, proximity to the DCA flight path is always a concern for the FAA, and at times our operations are restricted because of it.

10. The operating area for the County's drone program is also tightly bounded geographically. Arlington County Police drones do not fly in the District of Columbia—which includes Memorial Circle—or within Arlington National Cemetery or the Pentagon area without special authorization, which must be obtained in an emergency by request or through the FAA or another agency such as the U.S. Secret Service, or the FBI. The jurisdictional boundaries near the Arch site are sharply defined: Route 110 between Rosslyn and Crystal City is Arlington, but adjacent areas, such as Memorial Circle and portions of the area near the Pentagon, are within the District of Columbia.

11. Even for events the County Police have supported for years, flying in the same airspace, each operation requires FAA waivers, repeated coordination and deconfliction meetings, and months of planning among multiple agencies. For the recent 250th anniversary celebration, only three drone units were permitted to fly in the area: Arlington County Police Department on the Virginia side; the Pentagon Force Protection Agency (Pentagon Police); and a

joint U.S. Secret Service and FBI team at two sites within the District. Supporting that single ten-hour operation required months of planning, coordination, and meetings.

12. Emergency operations are even harder. Requests for authorization to fly during emergencies in this area are sometimes denied.

**Drone Operations at the Arch Would Make Arlington's Operations Significantly Harder**

13. On September 20, 2026, the President announced that the Arch would be converted into a "Military Complex" with "the rapid ability to use large numbers of drones." The addition of military drone operations at the Arch, in the heart of the airspace Arlington County Police already struggle to access, will make all of the work described above substantially harder.

14. At a minimum, drone operations at the Arch will require additional coordination, communication, and personnel to deconflict the airspace for each operation. County Police might be required to co-locate personnel with the agency operating the Arch drones (wherever they might be located) in order to coordinate flight paths.

15. Depending on the scale of drone operations at the Arch, the FAA could prioritize those activities and deny us authorization to fly in the area outright. Alternatively, the FAA might reduce the altitude and number of County Police drones authorized to fly, even for emergency operations. Our drones ordinarily operate at altitudes of up to approximately 400 feet; if drones are flying from the Arch, we could be limited to a lower ceiling, such as 200 feet, which would substantially reduce the situational awareness the drones provide to County officers. Each of these outcomes adds complexity and requires additional County personnel and time. They also risk reducing our capacity to prevent and solve crimes and respond to crises.

16. This risk is not hypothetical. Since the January 2025 midair collision between an Army Black Hawk helicopter and a commercial aircraft near DCA, the FAA has refused to permit other jurisdictions' law enforcement helicopters to cross into Arlington to provide backup

support, as was previously the case, and the FAA has heavily restricted access to the airspace even for law-enforcement helicopter missions. Before the collision, helicopters operated relatively freely in this airspace, and the County could request helicopter support from the U.S. Park Police or Fairfax County. Today, helicopter traffic in the area is almost nonexistent apart from Coast Guard security patrols. Law enforcement helicopters are rarely permitted to cross into Arlington because the DCA tower will not permit them; Park Police support is available only about half the time; and Fairfax County's helicopter can fly only in certain parts of Arlington—DCA will not authorize it in areas such as the Columbia Pike corridor, Crystal City, and parts of northern Arlington.

17. Those limits on helicopter support have made the County's drone program all the more important as a substitute for aerial support that helicopters would otherwise have provided. If and when restrictions like those described above are imposed on our drone operations because of competing drone activity at the Arch, the impact on the County's ability to maintain safety and provide emergency services will be all the more severe.

**NPS Has Not Analyzed These Effects**

18. To my knowledge, neither the National Park Service nor any other federal agency has provided the County or the public with any information about the drone operations planned for the Arch—including how many drones would operate from the site, at what altitudes and times, which agency would operate them, what they would be used for, or how those operations would be deconflicted with local public-safety operations and with aircraft using DCA. Memorial Circle lies near the DCA flight path, in airspace where drone operations are already heavily restricted because of the risk to aircraft. Without that information, County Police cannot begin to plan for how its own operations will be affected.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 5, 2026, in Arlington, Virginia.



Mohammed Tabibi
Captain
Arlington County Police Department