# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| COUNTY BOARD OF ARLINGTON COUNTY, VIRGINIA,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL PARK SERVICE, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-03372 (LMB-WEF) |

**DECLARATION OF ANTHONY FUSARELLI, JR. IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND SECTION 705 STAY**

I, Anthony Fusarelli, Jr., declare as follows:

1. I am over eighteen years of age and competent to make this declaration. The facts stated here are based on my personal knowledge, on my review of records maintained by Arlington County ("the County") in the ordinary course of its business, and on information provided to me by County staff and by the County's regular partners, including the Metropolitan Washington Airports Authority ("MWAA"), in the course of my official duties. If called as a witness, I could and would testify competently to these facts.

**Background**

2. I am the Planning Director for Arlington County, a position I have held since June 2021. As Planning Director, I lead the Planning Division of the County's Department of Community Planning, Housing and Development, which is responsible for the County's long-range land-use, sector and area planning, and development review, and implementation functions (including zoning ordinance amendments).

3. I have worked for the County since 2006, when I joined as a Planner II/Urban Design Planner. Before becoming Planning Director, I served as Assistant Director of the Department of Community Planning, Housing and Development. Prior to that appointment, I served in several other positions in the Planning Division between 2007 and 2017. Among other assignments, I was the County's project manager for the development of both the Crystal City Sector Plan (2010) and Rosslyn Sector Plan (2015)—long range planning documents for two highly developed areas of the County near Reagan National Airport and Memorial Circle. I have been a speaker on various topics and panels at national, state and regional level conferences of the American Planning Association (and its statewide chapters) and other professional organizations. I hold a bachelor's degree in landscape architecture from the University of Massachusetts Amherst and a master's degree in regional planning from Cornell University. I am certified by the American Institute of Certified Planners.

4. Although I am not an aviation engineer, through my work coordinating the County's land-use planning with MWAA over many years I have become familiar with the airspace constraints around Ronald Reagan Washington National Airport ("DCA") that bear on development in Arlington, and with the ways in which the County and MWAA work together to manage them.

5. I submit this declaration to describe how the proposed Triumphal Arch at Memorial Circle ("the Arch" or "the Arch project") will harm the County's land-use planning, airspace-related interests, infrastructure, and environmental resources, and how the National Park Service's ("NPS") failure to analyze those effects—and the truncated review process that preceded its decision—deprived the County of information it needs to protect those interests.

**Reagan National Airport and the County's Land-Use Planning**

6. DCA is located within Arlington County. The County is home to approximately 245,000 residents, and increased traffic at this busy and often-crowded airport has become a significant quality-of-life and safety issue for County residents, for reasons including aircraft noise and air pollution over the County's main business and residential corridors.

7. The County sets its own local building heights and permitted development densities through its land-use plans and zoning functions. Separately, under federal regulations, any proposed building above certain heights, within set distances from DCA, must receive a determination of no hazard to air navigation from the Federal Aviation Administration ("FAA") before the County will issue a building permit for any County Board-approved special exception development requiring such review by FAA. The County works closely with MWAA to ensure that development in the County does not adversely affect airport operations.

8. For many years, the County has coordinated with MWAA to align its land-use planning with airspace operations at DCA. As an example, in 2009, Arlington County and the FAA collaborated with other agencies to evaluate how the building heights in the draft Crystal City Sector Plan could affect regional airspace and operations at DCA. An FAA-led interagency working group analyzed phased redevelopment scenarios over the first 15 years of plan buildout for their potential impacts on navigation systems, radar coverage, flight procedures, communications, and military operations. The resulting FAA feasibility study found that planned building heights could proceed without adjustment, provided project-specific mitigation measures are implemented through future FAA aeronautical reviews. Following this collaborative study, the County Board adopted the Crystal City Sector Plan in 2010 which has subsequently guided significant development in the area.

9. A central element of ongoing coordination between the County and MWAA is the One Engine Inoperative ("OEI") condition. The FAA requires every airline to have approved procedures identifying a departure path that will allow an aircraft to clear obstacles safely if an engine fails during takeoff—when the aircraft cannot climb as quickly as normal. Each airline's specific OEI procedures are proprietary and are not available to the County.

10. Because of the region's constrained airspace—including protected airspace on the District side of the Potomac River and a limited number of runways—as well as local development patterns and the County's plans for future growth, MWAA has worked with the airlines to establish a single, consolidated OEI corridor that is protected at specific building heights to ensure a safe path between existing obstacles and protected airspace. County staff and MWAA officials engage regularly to ensure that development in the County generally aligns with that corridor. Furthermore, OEI and other airspace concerns, including the complexity of DCA airspace broadly, have led to direct engagement between representatives from certain airlines (with American Airlines as one example) and Planning staff at Arlington County.

**The Arch Would Encroach on Protected OEI Airspace**

11. The County understands that the proposed height of the Arch would encroach on the airspace that MWAA has designated to be protected for OEI conditions, and thus may affect the flight paths that airlines have designated for use in emergency scenarios. Specifically, the County understands that any structure at the Arch site exceeding approximately 200 feet above mean sea level—roughly 170 feet above grade—would penetrate the consolidated OEI surface that MWAA has been working to protect.

12. At 250 feet above grade, the County understands that the Arch would encroach approximately 80 feet into the designated OEI space, and that this encroachment likely will require MWAA and its partner airlines to modify their flight plans.

13. Modifications to the OEI corridor would harm the County in at least two ways. First, because MWAA's OEI corridor has been developed by accounting for existing development patterns in place at the time of formulation, and the County's more recent land-use planning has accounted for this existing consolidated corridor, any shift in that corridor would restrict the County's flexibility in land-use planning and could limit permissible development in the areas affected. Second, altered flight paths could route more aircraft over residential and business neighborhoods in the County, increasing noise and air pollution there.

14. In addition, MWAA and airline representatives have identified another potential adverse impact resulting from potential modifications to the OEI corridor, which is the risk that airlines could reduce available seats/cargo on their flights, or ultimately decide to cancel certain flights or no longer operate out of DCA altogether. MWAA and airline partners have noted to County staff that such decisions made in response to modifications to OEI procedures would have negative economic impacts to the County, as a result of decreases in overall passenger volumes operating out of DCA, and associated reductions in spending (and taxes associated with that spending) on food and beverages, hotel accommodations, and other related purchases.

15. In their studies, NPS did not analyze these issues and in fact, FAA's standard practice for these aeronautical studies does not account for OEI issues. NPS's initial EA relied on an FAA feasibility study concluding that the project would not affect "airspace" or "visual or instrument procedures" at DCA. To my understanding, however, the FAA's review did not consider the OEI condition at all; it was outside the scope of what the FAA examined.

16. The FAA's follow-up determination, issued on September 18, 2026, once again declined to fully consider the impact of the Arch on safe navigation to and from DCA. Specifically, FAA received a comment expressing concern that OEI "avoidance requirements

may force operators to reduce takeoff weight, delay departures during low visibility/ceilings, require excessive climb gradients, decline SIDs/ODPs, or cancel flights." Yet FAA brushed off these concerns, stating that "OEI obstacle departure profiles fall outside the regulatory scope of" the relevant regulations.

17. Nor has NPS analyzed whether the cranes needed to build the Arch—which NPS itself has explained may rise to up to 320 feet, or 70 feet above the Arch's planned 250-foot height—will encroach on DCA airspace, including the OEI surface, during construction. The County raised this concern with the National Capital Planning Commission ("NCPC"), as described below. NPS has provided no analysis of how the height of the Arch will affect the frequent helicopter flights over the County.

18. As a result, the County faces a risk of increased overflights caused by the diversion of air traffic both during and after construction. Given the limited airspace around DCA, any meaningful number of diversions could increase air traffic directly over the County's busiest urban corridors and other residential areas in Arlington, increasing noise and air pollution and detracting from the livability and desirability of living and working in those areas.

19. Because the Arch will be an obstruction to air navigation, *see* 14 C.F.R. § 77.17(a), it will require an FAA-compliant aviation warning. Current plans show a natural-gas powered "eternal flame" atop the Arch to warn approaching pilots.

20. Nor, to my knowledge, has NPS assessed the potential risks to aircraft and to County residents from housing and operating drones in a large facility that lies close beneath the flight path of a major airport, as the President announced on September 20, 2026.

**Harms to Infrastructure and Environmental Resources**

21. The project will also harm the natural and scenic resources of the George Washington Memorial Parkway and the Potomac River corridor, permanently altering the

Parkway's setting and protected viewshed. Although the Parkway is administered by federal authorities, countless County residents travel on it every day. Its natural beauty and historic value, and the recreational opportunities it and the adjacent trails provide, contribute to the County's high desirability for current and future residents and to the County's consistent ranking near the top of communities with healthy residents. Detrimental impacts to these natural resources threaten to decrease the County's appeal to current and future residents.

22. Residents' access to walking and cycling trails such as the Mount Vernon Trail is a key part of the livability and desirability that drive growth in the County and inform the County's planning for this area. The construction plan would close the south side of Memorial Circle for most of the construction period. During that time, pedestrians and cyclists would use a 6-foot detour along the north and east sides of the circle, which adds a crossing of two travel lanes. That would lengthen trips and make access to the Mount Vernon Trail, the Arlington Metrorail station, and Arlington National Cemetery less direct. Arlington County's requests for a wider detour, cyclist signage, and an open southern crosswalk remain unaddressed in the plan. The National Park Service has committed only to revisit them in later design phases. NPS's own statements are inconsistent on whether the southern crosswalk would stay open. Interrupting access to these spaces will make the County less appealing to current and future residents and disrupt County planning.

**The County Was Denied a Meaningful Opportunity to Participate**

23. The County repeatedly raised these concerns with the federal agencies responsible for the Arch, under review timelines that denied it any meaningful opportunity to participate. On June 17, 2026, I submitted written comments on behalf of the County to NCPC. That letter, which reflected the work of staff across multiple County departments, identified deficiencies in the project's transportation study and the County's concerns regarding emergency response,

airspace (including the effect of construction cranes and of the Arch itself on OEI planning), water infrastructure, and historic resources. It was accompanied by 32 detailed technical comments from the County's Division of Transportation. See Exhibit 1.

24. NCPC allowed the County only seven days to respond—compared with the 60 days NCPC typically provides for projects affecting Arlington. The next day, June 18, 2026, NPS released the Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") together.

25. By issuing the EA and FONSI without the analysis the County requested and without giving the County a meaningful opportunity to comment, NPS deprived the County of information it needs to protect its land-use planning, infrastructure, and the other interests described above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 5, 2026, in Arlington County, Virginia.

Anthony Fusarelli, Jr., AICP
Planning Director
Department of Community Planning,
Housing and Development
Arlington County, Virginia