# EXHIBIT Q

Travis Voyles
Vice Chairman

Reid J. Nelson
Executive Director

October 9, 2026

The Honorable Doug Burgum
Secretary
U.S. Department of the Interior
1849 C Street NW
Washington, DC 20240

Ref: *Proposed Triumphal Arch*
*Washington, District of Columbia, and Virginia*
*ACHP Case #025123*

Dear Secretary Burgum:

In accordance with Section 106 of the National Historic Preservation Act (54 U.S.C. § 306108) (NHPA) and its implementing regulations, "Protection of Historic Properties" (36 CFR Part 800), I am writing to convey to you the final comments of the Advisory Council on Historic Preservation (ACHP) regarding the Triumphal Arch Project. On September 24, 2026, the ACHP terminated consultation under 36 CFR § 800.7(a), having determined that further consultation would not be productive. In accordance with 36 CFR § 800.7(c), the ACHP is providing these comments to you to consider and respond to before you make a final decision regarding the undertaking.

Please note that these comments are applicable to the undertaking and its effects on historic properties as described by the National Park Service (NPS) in its correspondence to the ACHP, dated September 22, 2026.

**Undertaking Description and Section 106 Consultation**

As detailed by the NPS, the proposed undertaking includes construction of a Triumphal Arch (Arch) within Memorial Circle in Washington, DC, associated plaza and landscape improvements, supporting utility and stormwater infrastructure, traffic and pedestrian circulation modifications, security features, lighting, and temporary staging and laydown areas required for construction. The Arch would be an approximately 250-foot-tall reinforced concrete structure clad in granite and ornamented by a central winged figure and two eagles positioned above each Arch leg. Dimensions will be finalized during future design efforts. The principal architectural component would rise approximately 166 feet above finish grade, with surmounting statuary extending the total height to approximately 250 feet. The Arch would serve as a monumental architectural feature aligned with the axis between Memorial Avenue and the Arlington Memorial Bridge.

The NPS initiated consultation for this undertaking on June 5, 2026, at which time it requested to expedite consultation by addressing multiple steps in 36 CFR §§ 800.3 through 800.6 concurrently. Following the initiation of consultation, the NPS held two consultation meetings, on June 15, 2026, and September 9, 2026, which provided an opportunity for approximately 40 consulting parties to provide feedback on the undertaking, the NPS's identification efforts, its assessment of effects, and the proposed resolution of adverse effects through a Section 106 agreement document. The NPS requested written comments on

these points from consulting parties throughout this timeframe. As required by Section 106, the NPS also provided an opportunity for the public to comment on the undertaking, resulting in approximately 107,000 comments.

Consulting parties, including the State Historic Preservation Officers for the District of Columbia and Virginia, raised numerous concerns to the NPS, including whether alternatives to meet a similar purpose and need for the undertaking had been considered to meet the NHPA's Section 110(f) requirements (54 U.S.C. § 306107), and whether the NPS's identification efforts and assessment of effects were sufficient for an undertaking of this scale. Consulting parties and members of the public also raised concerns about the number of historic properties that may be located within the undertaking's area of potential effects and adversely affected by the undertaking.

Adversely affected historic properties noted by the NPS include six National Historic Landmarks (NHLs), eight historic districts, eight cultural landscapes, and 20 individual or other types of historic properties. The NPS further noted that archaeological resources, which are still being identified, would also be adversely affected by the undertaking. Of particular concern to consulting parties were the potential effects to the Arlington National Cemetery Historic District, as home to the nation's fallen soldiers.

The NPS indicated that since it considered the undertaking to be location dependent, it was unable to employ any of the avoidance alternatives considered such as relocating the undertaking. The NPS also assessed and deemed other design options infeasible as they would result in fully obscuring the views between the Lincoln Memorial and Arlington National Cemetery. In addition, because the Arch is intended to celebrate 250 years of American independence, the NPS stated that potential smaller heights were not considered representative of this milestone. The NPS noted, however, that minimization could be achieved through construction management controls, and that mitigation would include archaeological investigations, park improvements, documentation, and public interpretive materials.

Section 110(f) of the NHPA requires federal agencies, to the maximum extent possible, to undertake planning and actions necessary to minimize harm to any NHL that may be directly and adversely affected by an undertaking. The NPS stated in its Assessment of Effects, dated August 28, 2026, that avoidance through relocation would constitute a materially different undertaking rather than a reasonable avoidance measure for this undertaking. The NPS indicated that Section 110(f) does not require that all harm be eliminated where avoidance would defeat the purpose of the undertaking, and that it has met the "to the maximum extent" threshold by its identification, evaluation, consultation, consideration of avoidance, and development of minimization and mitigation measures.

In its September 22, 2026, correspondence to the ACHP, the NPS stated it had been unable to reach agreement with the consulting parties regarding the extent to which adverse effects could be avoided or minimized, and the sufficiency of proposed mitigation measures. It also stated that based on the consultation to date, it did not believe that continued efforts to revise the Memorandum of Agreement (MOA) would resolve the central disagreement over whether the undertaking's adverse effects can be adequately avoided, minimized, or mitigated while maintaining the project in its proposed location and general design.

ACHP made the decision to terminate consultation because it determined there was limited likelihood of reaching agreement on an MOA. Therefore, on September 24, 2026, the ACHP terminated consultation, and committed to providing these comments for your consideration.

**Undertaking Recommendations**

Based on the above summary of consultation, I offer the following recommendations for your consideration:

*The NPS should continue to detail how it is meeting the requirements of Section 110(f).*

The ACHP recommends the NPS, if possible, to continue to detail and provide any additional information available on its efforts in this regard and its rationale for how it is meeting the requirements of the law. While the NHPA does not prohibit adverse effects to NHLs, any additional information or explanation as to how the undertaking and its direct adverse effects to historic properties remain in the public interest in its consideration of alternatives to avoid or minimize such adverse effects would further benefit the NPS.

Particularly as it relates to Arlington National Cemetery within the Arlington National Cemetery Historic District, the NPS should continue to detail what steps it intends to take to address the adverse effects of the undertaking that would continue after the undertaking is constructed. This is important to ensure that the affected historic property will maintain its ability to convey its status and significance as a solemn resting place for those who have served our nation.

*If the NPS chooses to proceed with the undertaking as described, it should determine and communicate next steps for carrying out and implementing any mitigation measures to address the adverse effects to NHLs and other historic properties.*

While the draft MOA, circulated by the NPS on September 15, 2026, included numerous mitigation ideas, many of them, such as data recovery, interpretive materials and educational opportunities, will benefit in implementation from additional detail to ensure they are effective. The ACHP can provide advice on any mitigation actions or additional measures that NPS might implement or that may need or benefit from additional detail. As part of the NPS's commitment to mitigation, the NPS should consider how to incorporate opportunities to ensure these deliverables are accurate, comprehensive, and reflect the public's interest.

*The NPS has the responsibility to seek and consider the views of the public in making its decision, especially recognizing that the nature of the proposed undertaking and the level of public interest in the undertaking's effects on historic properties.*

While use of section 800.3(g) of the Section 106 regulations can be an effective tool for expediting reviews, challenges are anticipated in the use of this provision for those undertakings that have the potential to adversely affect historic properties of national significance and generate a large degree of public interest. In future undertakings, the NPS should continue to assess the use of this regulatory provision when the undertaking involves effects to nationally significant historic properties or NHLs, or when the effects are likely to be adverse.

Given the importance of ensuring the opportunity for the NPS to meaningfully consider comments from the parties that participated in consultation, address those comments, and incorporate that analysis into the record for the consideration of alternatives and for the development of mitigation, any further detail or opportunities that can be provided as this undertaking proceeds could also be useful for successful implementation.

As stated in the Section 106 regulations, the views of the public are essential to informed federal decision making (36 CFR § 800.2(d)(1)). More broadly, the NHPA recognizes that preservation of our national heritage is in the public interest so that the country's vital legacy of cultural, educational, aesthetic, inspirational, economic, and energy benefits will be maintained and enriched for future generations of Americans (Section 1 of the National Historic Preservation Act, Pub. L. No. 89-665, as amended by Pub. L. No. 96-515; 54 U.S.C. § 300101). The ACHP received approximately 7,200 comments from the public during its review period; in addition to the 107,000 comments the NPS received, it is clear this undertaking and its effects on historic properties are of great importance to American citizens. As an

agency operating in the public interest, it is important that the NPS provides details of how its decision on this undertaking recognizes the public interest and its views, and how the agency will ensure the affected historic properties for which it is a steward will be maintained and enriched for those future generations (54 U.S.C. §§ 306101(a), 306102). We appreciate the NPS's extensive efforts thus far in this regard, we urge it to continue to utilize opportunities to further explain how, as an agency with the mission of conserving the scenery and the natural and historic objects within the properties it manages, it is ensuring that its actions with this undertaking are ensuring their protection for the enjoyment of future generations.

**Conclusion**

Section 800.7(c)(4) of the Section 106 regulations requires you, as the head of the agency, to take these comments into account in reaching a final decision on the undertaking. As stated in Section 110(l) of the NHPA (54 U.S.C. § 306114), you may not delegate this responsibility. A summary of your decision regarding the undertaking that contains the rationale for the decision and evidence of consideration of the ACHP's comments must be provided to the ACHP prior to the final decision on the undertaking and shared with the Section 106 consulting parties and the public. Once you submit your response and decision on the undertaking to the ACHP, the Section 106 review for this undertaking will be complete.

In accordance with Section 201 of the NHPA, 54 U.S.C. § 304101(f), when the office of the chairman of the ACHP is vacant, the vice chairman shall perform the functions of the chairman. Therefore, I have issued these comments in my role as vice chairman on behalf of the ACHP.

The NHPA requires that the federal government exercise leadership in the preservation of the nation's irreplaceable historic heritage. In that spirit, I look forward to your consideration of these comments and recommendations as a productive path forward for this significant undertaking which will celebrate 250 years of American independence.

Sincerely,



Travis Voyles
Vice Chairman